# 16-0413-bk(L),
# 16-420-bk(CON), 16-423-bk(CON)

## United States Court of Appeals
### *for the*
## Second Circuit

In the Matter of: BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,

*Debtor,*

ELLIOT G. SAGOR, EDWARD A. ZRAICK, JR., NANCY ZRAICK, PATRICIA DELUCA, KAREN M. RICH, THERESA R. RYAN, LAWRENCE J. RYAN, CALLIE A. OSTENSON-MURRAY, KELLY BUNCH, ROBERTA

*(For Continuation of Caption See Inside Cover)*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR *AMICI CURIAE* IN SUPPORT OF APPELLANTS

RICHARD A. KIRBY
LAURA K. CLINTON
BAKER & MCKENZIE LLP
*Attorneys for Amici Identified*
*in Appendix A*
815 Connecticut Avenue, NW
Washington, DC 20006
(202) 452-7000

RICHARD LEVY, JR.
PRYOR CASHMAN LLP
*Attorneys for Amici Identified*
*in Appendix B*
7 Times Square
New York, New York 10036
(212) 421-4100

*(For Continuation of Appearances See Inside Cover)*

SCHWARTZ, BRET PALMER, SLOAN G. KAMENSTEIN, AARON
BLECKER, ANGELA TILETNICK, BARBARA ENGEL, BARBARA
KOTLIKOFF HARMAN, BEN HELLER, BENJAMIN T. HELLER
IRREVOCABLE TRUST, BETH P. FELDMAN, BRUCE N. PALMER, CAROL
FISHER, CAROL KAMENSTEIN, CHALEK ASSOCIATES LLC, DAVID
CHALEK, FRANCES REISS, ISABEL CHALEK, JOHN TZANNES TRUST,
MITCHEL CHALEK, MORTON CHALEK, PETER TZANNES, RICHARD
MARK CHALEK, ROBIN TZANNES, LAURA HALLICK, ELAINE R.
SCHAFFER, FERN C. PALMER, ESTATE OF GABRIEL FRIEDMAN c/o
RICHARD FRIEDMAN EXECUTOR, FERN C. PALMER REVOCABLE
TRUST, FRIEDA LOW, GLENN RECHLER, GUNTHER UNFLAT,
HERBERT BARBANEL & ALICE BARBANEL JT WROS., JONATHAN
SCHWARTZ, KEITH SHAFFER, MARTIN R. HARNICK, MARJORIE
FORREST, KURT C. PALMER, KENNETH M. KOHL, MYRNA KOHL,
STEVEN P. NORTON, ROBERT K. LOW, RICHARD M. FRIEDMAN, RONA
MAST, ELAINE RUTH SCHAFFER, PHILIP E. MILLER, PAMELA K.
MARXEN, SAGE REALTY, RYAN MURRAY, TRACY D. KAMENSTEIN,
PALMER FAMILY TRUST, GUNTHER K. UNFLAT, ROBIN L. WARNER,
JON WARNER, TIMOTHY SHAWN TEUFEL, VALERIE ANNE TEUFEL,
MEGAN BUNCH, MARSHA PESHKIN, BENJAMIN RECHLER TRUST,
OSCAR PALMER, BLAKE PALMER, MISHKIN FAMILY TRUST, DANA
LEFAVOR, SANDY SANDLER, BOYER PALMER, SOPHIA PALMER,
TIMOTHY S. TEUFEL, WILLI RECHLER TRUST, HEIDI HOLMERS,
GABA PARTNERSHIP, DENIS CASTELLI, ROBERT HALIO,
STEVEN C. SCHUPAK, ADELE FOX, TOBY LEES, ESTATE OF
BOYER PALMER.

*Appellants,*

– v. –

IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff
Investment Securities LLC,

*Appellee,*

SECURITIES INVESTOR PROTECTION CORPORATION,
Statutory Intervenor pursuant to Securities Investor Protection Act,
15 U.S.C. Section 78eee(d),

*Intervenor.*

CAROLE NEVILLE
DENTONS US LLP
*Attorneys for Amici Identified*
*in Appendix C*
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

WILLIAM P. WEINTRAUB
KIZZY L. JARASHOW
GOODWIN PROCTER LLP
*Attorneys for Amici Identified*
*in Appendix D*
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Amici identified in Appendices A-D, by and through their respective undersigned counsel, state that none of them have parent corporations and that there is no publicly held corporation that owns 10% or more of the stock of any Amicus.

# <u>TABLE OF CONTENTS</u>

**Page**

IDENTITY AND INTEREST OF AMICUS CURIAE............................................2

STATEMENT OF THE CASE...................................................................5

    A.    SIPA and the Bankruptcy Code Provide the Statutory Framework for this Appeal .......................................5

    B.    The Trustee's Calculation of Net Equity Claims ...................7

    C.    Madoff Securities Victim Doris M. Pearlman .....................8

    D.    Claim Determination Objections.........................................10

    E.    Trustee's Motion to Affirm the Inter-Account Write-Downs............10

    F.    The Bankruptcy Court's Inter-Account Transfer Decision.................11

    G.    The District Court Ruling..................................................12

SUMMARY OF ARGUMENT ...............................................................13

ARGUMENT .....................................................................................16

    A.    Under SIPA, the full face-value of any inter-account transfers, as noted on account statements and trade confirms, must be credited to the receiving customer. ....................................16

        1.    The definition of "net equity" includes amounts "owed," and under state law, Madoff Securities owed its customers the full face-value of any inter-account transfer....................................16

        2.    The Trustee's Inter-Account Write-Downs ignore the separate nature of the transferor and transferee accounts.........18

        3.    The Trustee's Inter-Account Method fails to give effect to the cash deposits recorded in Madoff Securities' books and records..................................21

    B.    The Trustee's Inter-Account Write-Downs seek to improperly circumvent the limits on his avoidance powers under the Bankruptcy Code............................................22

    C.    Neither the *Net Equity Decision* nor the *Antecedent Debt Decision* support the bankruptcy court's decision. ...........................26

    D.    This Court should restrict its holding to an interpretation of "net equity" under SIPA and not "value" as defined under 548(c) of the Bankruptcy Code. ......................................29

# TABLE OF CONTENTS
## (Continued)

**Page**

CONCLUSION ...................................................................................31

APPENDIX A ...................................................................................34

APPENDIX B ...................................................................................35

APPENDIX C ...................................................................................36

APPENDIX D ...................................................................................38

CERTIFICATE OF COMPLIANCE WITH FRAP 32 ..........................................39

CERTIFICATE OF FILING AND SERVICE .......................................................40

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*APWU v. Potter*,
  343 F.3d 619 (2d Cir. 2003) ...............................................................22

*In re Bernard L. Madoff Inv. Sec. LLC,*
  654 F.3d 229 (2d Cir. 2011) ......................................................*passim*

*In re Bernard L. Madoff Inv. Secs. LLC*,
  773 F.3d 411 (2d Cir. 2014), *petitions for cert. filed*,
   Nos. 14-1128, -1129 (U.S. Mar. 17, 2015)................................*passim*

*Butner v. United States*,
  440 U.S. 48 (1979)...............................................................................17

*Diana Melton Trust v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*,
  15 Civ. 1151 (PAE), 2016 U.S. Dist. LEXIS 4655
   (S.D.N.Y. Jan. 14, 2016).....................................................................3

*In re Dreier LLP*,
  429 B.R. 112 (Bankr. S.D.N.Y. 2010).................................................24

*Law v. Siegel*,
  134 S. Ct. 1188 (2014)..........................................................................30

*In re Mansaray-Ruffin*,
  530 F.3d 230 (3d Cir. 2008) .................................................................20

*Picard v. Fairfield Greenwich Ltd.*,
  762 F.3d 199 (2d Cir. 2014) ........................................................29, 31

*S.E.C. v. Universal Express, Inc.*,
  No. 04 Civ. 2322 (GEL), 2008 U.S. Dist. LEXIS 35342
   (S.D.N.Y. Apr. 30, 2008)....................................................................23

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC
  (In re Madoff Sec.)*,
  499 B.R. 416 (S.D.N.Y. 2013) ......................................................12, 28

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  522 B.R. 41 (Bankr. S.D.N.Y. 2014).........................................*passim*

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015) ................................................................4

*In re United Energy Corp.*,
    944 F.2d 589 (9th Cir. 1991) .............................................................................30

### STATUTES

Fed. R. App. P. 26.1 ............................................................................................1

Fed. R. App. P. 29(a) ..........................................................................................2

Fed. R. App. P. 29(c)(5) ......................................................................................2

Fed. R. Bankr. P. 7001(1) ..................................................................................20

17 C.F.R. § 300.100(b) ......................................................................................19

17 C.F.R. § 300.104(b) ......................................................................................19

11 U.S.C. § 101(54) .......................................................................................6, 24

11 U.S.C. § 101(54)(D) ......................................................................................23

11 U.S.C. § 546(e) ...........................................................................10, 17, 29, 31

11 U.S.C. § 548 ..................................................................................................22

11 U.S.C. § 548(a) .............................................................................................11

11 U.S.C. § 548(a)(1) ...................................................................................6, 7, 10

11 U.S.C. § 548(a)(1)(A) .............................................................................6, 25, 28

11 U.S.C. § 548(c) .......................................................................................*passim*

11 U.S.C. § 548(d)(2)(A) ......................................................................................7

11 U.S.C § 550 ...................................................................................................23

15 U.S.C. § 78fff–2(b) ................................................................................*passim*

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

15 U.S.C. § 78fff–2(c)(1)(B) ...............................................................5

15 U.S.C. § 78fff–2(c)(3)...........................................................6, 15, 22

15 U.S.C. § 78fff–3(a)(2)..................................................................14, 18

15 U.S.C. § 78*lll*(2)(B) ....................................................................14, 21

15 U.S.C. § 78*lll*(2)(B)(i) .....................................................................5

15 U.S.C. § 78*lll*(2)(B)(iii) ..................................................................22

15 U.S.C. § 78*lll*(11)...................................................................*passim*

N.Y.U.C.C. § 8–501(b)(1) & cmt. 2 .......................................................17

N.Y.U.C.C. § 8–502(b) .........................................................................26

## IDENTITY AND INTEREST OF AMICUS CURIAE

Amici[1] are innocent customers of Bernard L. Madoff Investment Securities LLC (**"Madoff Securities"**), some of whom filed customer claims in the liquidation proceeding and all of whom now find themselves defendants in Irving H. Picard's (the **"Trustee's"**) avoidance actions to recover customer property transferred to them by their broker. Each Amicus received a cash transfer into her Madoff Securities account from a separate Madoff Securities account at some point during the account's history. Madoff Securities recorded that transfer on contemporary account statements and trade confirmations as a cash withdrawal from the transferor's account and a cash deposit into the transferee's separate account. The Trustee denied or reduced customer claims because he discounted these inter-account transfers.

Further, in calculating his avoidance claims, the Trustee simply disregarded whatever portion of the transfer he claimed was greater than the principal balance in the *transferor's* account, thereby increasing each Amicus's exposure in hindsight because of an alleged net deficit in a separate transferor account. Every Amicus is defending against these avoidance claims on the basis that she gave

---

[1] Amici are listed in Appendices A-D. Amici certify under FRAP 29(c)(5) that none of the parties or their counsel authored any part of this brief and that no person other than Amici contributed money intended to fund its preparation and submission. This amicus brief is filed by consent of all parties under FRAP 29(a).

value to the debtor under Section 548(c) of the Bankruptcy Code in the amount of the original cash transfer because she had, *inter alia*, a state law claim at the time of each withdrawal for the full amount of the cash transfer recorded on her account statement or trade confirmation.

In the proceedings below, it was unclear if the Trustee sought a ruling limited only to the interpretation of "net equity" under the Securities Investor Protection Act (**"SIPA"**) for customer claims, or a broader pronouncement that would implicate the Section 548(c) value defense in the avoidance actions. *See* AA96, AA102.[2]  Consequently, some Amici opposed the Trustee's motion. *Claimants' Omnibus Opposition to Trustee's Motion*, Adv. Pro. No. 08-01789, Dkt. No. 6732 (Bankr. S.D.N.Y.).  The bankruptcy court limited its ruling solely to the appropriate treatment of inter-account transfers in computing "net equity" for SIPA customer claims. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 522 B.R. 41, 46-47 (Bankr. S.D.N.Y. 2014) (**"Inter-Account Transfer Decision"**).  Because of that limitation, some claimants did not appeal.  Appellants sought review by the district court, which affirmed and also limited its holding to the SIPA context. *See Diana Melton Trust v. Picard*, 15 Civ. 1151 (PAE), 2016 U.S. Dist. LEXIS 4655 (S.D.N.Y. Jan. 14, 2016) (**"District Court Decision"**).

---

[2] Record citations are to the *Appendix on Behalf of Appellants Volume I through VI*, Case No. 15-01151, Dkt. No. 12-1 (S.D.N.Y. Apr. 27, 2015).

In a separate decision denying motions to dismiss adversary proceedings, the bankruptcy court explicitly extended the *Inter-Account Transfer Decision* to the calculation of avoidance exposure. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 479 (Bankr. S.D.N.Y. 2015) ("Although the *Inter-Account Transfer Decision* dealt with the computation of net equity under SIPA . . . the computation of fictitious profits that a defendant received through an inter-account transfer is the same for purposes of calculating the customer's net equity claim or his clawback exposure."). All Amici have an interest here to the extent that the lower court rulings implicate the Section 548(c) value defense, an issue the district court has not yet addressed.

Amici support reversal. The Trustee's treatment of inter-account transfers in computing SIPA customer claims violates the statute's plain language. To disregard a transfer, the Trustee must follow the Bankruptcy Code's process for avoidance, subject to its statutory limitations. Regardless of the Court's view of the merits, Amici urge the Court to limit any ruling to the treatment of inter-account transfers for *SIPA* net equity claims, reserving the *Bankruptcy Code's* Section 548(c) "value" defense for disposition in the avoidance proceedings.

## STATEMENT OF THE CASE

### A.    SIPA and the Bankruptcy Code Provide the Statutory Framework for this Appeal

SIPA establishes procedures for liquidating failed broker-dealers, which prioritize the claims of the broker's customers for the return of their account balances, computed as customer "net equity." SIPA establishes a fund of customer property separate from the general estate, for priority distribution exclusively among the broker-dealer's customers. Each customer shares ratably in this fund to the extent of the customer's net equity. 15 U.S.C. § 78fff–2(c)(1)(B).

Under SIPA, the Trustee is charged with determining the net equity claims of customers who make claims against the separate pool of customer property. *Id.* § 78fff–2(b). "Customer" is statutorily defined, and includes any person who "deposit[s] cash with the debtor for the purpose of purchasing securities[.]" *Id.* § 78*lll*(2)(B)(i).[3] SIPA fixes the amount due (the customer's "net equity") by the debtor's obligations to the customer under applicable substantive law. *See id.* § 78*lll*(11). Moreover, SIPA provides that "accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers." *Id.* (defining "net equity").

---

[3] Amici, who deposited funds into their Madoff Securities brokerage accounts for the purpose of trading in securities, are "customers". *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 236 (2d Cir. 2011) (the **"Net Equity Decision"**) ("[T]he [Madoff Securities] claimants are customers with claims for securities within the meaning of SIPA.").

Beyond calculating net equity and customer claims, a SIPA trustee is "vested with the same powers and title with respect to the debtor and the property of the debtor . . . as a trustee in a case under [the Bankruptcy Code]." *Id.* §§ 78fff–1(a). The Bankruptcy Code defines "transfer" as any mode – direct or indirect – of parting with an interest in property. 11 U.S.C. § 101(54). As relevant here, SIPA borrows the Bankruptcy Code's avoidance powers and limits a SIPA trustee to avoidance of *transfers* "if and to the extent that such transfer is voidable or void under the provisions of title 11." 15 U.S.C. § 78fff–2(c)(3). Thus, a SIPA trustee's powers—like those of a bankruptcy trustee—are statutorily limited.

For example, a SIPA trustee has authority to

avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, *that was made or incurred on or within 2 years before the date of the filing of the petition*, if the debtor voluntarily or involuntarily [ ] made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted[.]

11 U.S.C. § 548(a)(1)(A) (emphasis added). This avoidance power is further limited by Section 548(c), which provides that

a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

- 6 -

*Id.* § 548(c).[4]  While SIPA explicitly borrows the Bankruptcy Code's provisions for avoiding transfers made by the debtor, SIPA makes no reference to granting a SIPA Trustee any power to avoid a debtor's "obligations".[5]

###  B.  The Trustee's Calculation of Net Equity Claims

The Trustee determined thousands of customer claims filed against Madoff Securities.  He calculated each customer's net equity by netting the customer's total deposits against the total withdrawals over the entire history of the account (the **"Net Investment Method"**).  Where a customer's cash deposits included transfers from a separate Madoff Securities account, however, the Trustee unilaterally reduced the amounts of those deposits if he determined that the transferor's account lacked the net equity sufficient to fund the transfer (the **"Inter-Account Write-Downs"**).  The Trustee did not attempt to formally avoid the obligations to transferee-customers under Section 548(a)(1).  Instead, he simply reduced (or wrote off entirely) the value of the cash transfers—regardless of when the transfer occurred.

Many customers objected to the Net Investment Method, arguing their entitlement to the full amounts listed on their Madoff Securities account statements

[4] "Value" includes payment of an antecedent debt.  *Id.* § 548(d)(2)(A).  "Debt" is defined as liability on a claim; "claim" includes any "right to payment."  *Id.* §§ 101(5), (12).

[5] Amici do not concede that a SIPA trustee has any power to avoid a broker's obligations to customers, an issue not before the Court.

(the **"Last Statement Method"**).  Ultimately, this Court endorsed the Trustee's Net Investment Method.  *Net Equity Decision*, 654 F.3d at 241-42.  But the Court clarified that it was deciding only between the two proposals:  "The two competing methods of calculating 'Net Equity' proposed by the parties to this litigation are the only two methods at issue here," but "[w]e do not hold that they are the only possible approaches to calculation of 'net equity' under SIPA."  *Id.* at 235 n.5.

The *Net Equity Decision* is silent on how to treat inter-account transfers. *Inter-Account Transfer Decision*, 522 B.R. at 51.  After the *Net Equity Decision* affirmed his use of the Net Investment Method in calculating net equity customer claims, the Trustee applied his Inter-Account Write-Downs to further reduce the net equity of receiving customers.  An example of the dramatic impact of that treatment is illustrated by one amicus account.

### C.     Madoff Securities Victim Doris M. Pearlman

Prior to her death on October 10, 2011, Ms. Pearlman filed a customer claim for the full amount shown on her last Madoff Securities account statement. Madoff Securities' books and records show the following transactions[6] for her account:

---

[6] The Trustee's full description of these transactions appears in the Amended Complaint against Pearlman, Adv. Pro. No. 10-04504, Dkt. No. 18 (Bankr. S.D.N.Y. filed Jan. 30, 2012).

- **February 3, 2000:** Ms. Pearlman opened her account and received an inter-account transfer from a separate Madoff Securities account (denominated "50 ACCT") for $4,399,489.74. The Trustee claims "50 ACCT" had $1,719,672.96 in equity at that time.

- **March 2000–December 2008:** Until Madoff Securities' collapse, Ms. Pearlman made monthly withdrawals of roughly $39,000 to $40,000.00, totaling $4,182,407.20.

- **December 2007–January 2008:** Ms. Pearlman made three additional deposits of cash into her Madoff Securities account totaling $78,000.00.

The Trustee applied his Inter-Account Write-Down to reduce the February 2000 inter-account transfer to $1,719,672.96. Because of this write-down, the Trustee denied Ms. Pearlman's customer claim, alleging that she withdrew more than she deposited:

| Account Activity | Net Investment Method Crediting Inter-Account Transfer | Net Investment Method + Inter-Account Write-Down |
|---|---|---|
| 2000 - Transfer from "50 ACCT" | $4,399,489.74 | $1,719,672.96 |
| 2000-2008 - Withdrawals | ($4,182,407.20) | ($4,182,407.20) |
| 2007-2008 – Deposits | 78,000.00 | 78,000.00 |
| **Net Equity** | **$295,082.54** | **($2,462,734.24)** |

Ms. Pearlman should have a net equity claim of $295,082.54. But after the Trustee wrote down the inter-account transfer, he denied her net equity claim in its entirety. He then filed an adversary proceeding against Ms. Pearlman for the alleged negative balance and, following her death in 2011, sued her heirs and

successors as alleged subsequent transferees for recovery of the entire $2,462,734.24.[7] Yet, if the Trustee had formally attempted to avoid the obligation to Ms. Pearlman fixed by the February 2000 transfer (rather than simply writing it down) that claim would have been barred by the two-year statute of limitations under Section 548(a)(1).

### D.    Claim Determination Objections

Numerous customers objected to the Inter-Account Write-Down reductions to their net equity claims. For some, the reductions were significant enough to render their total withdrawals greater than their total deposits. Where the Trustee brought avoidance actions to recover the difference, Amici asserted that they gave the debtor value under Section 548(c) in exchange for each withdrawal sufficient to allow the customers to retain the amounts paid. They asserted that because the Trustee lacks the statutory power to avoid obligations recorded by the debtor as inter-account transfers, each of the later withdrawals satisfied the broker's related obligations.

### E.    Trustee's Motion to Affirm the Inter-Account Write-Downs

In response, the Trustee filed a motion in the bankruptcy court "seeking entry of an order affirming the application of the Net Investment Method . . . to

---

[7] All of Trustee's avoidance claims regarding transfers made more than two years before the filing date were subsequently dismissed. *546(e) Decision*, 773 F.3d at 415.

transfers between [Madoff Securities] customer accounts." AA107. The Trustee argued that the Inter-Account Write-Downs merely "adjusted the transfers out of the transferor account to reflect [only] the amount of principal actually available in the account." AA126. The Trustee did not directly dispute that the inter-account transfers between separate accounts in fact occurred and that they were recorded on the broker's books and records as transfers of cash:

> **The Court**: But the transfer was of actual cash, right?
>
> **Trustee's Counsel**: We agree that the books and records of [Madoff Securities] indicate that a transfer occurs. And the fact of a [cash] transfer is indicated in the amounts --

AA554.

### F.    The Bankruptcy Court's Inter-Account Transfer Decision

On December 8, 2014, the bankruptcy court approved the Trustee's Inter-Account Write-Downs. Finding that the write-downs allowed the Trustee "to perform his statutory duty of computing net equity to his satisfaction in reliance on the non-fraudulent entries in [Madoff Securities'] books and records," the court held that the Trustee's "chosen method is entitled to deference." *Inter-Account Transfer Decision*, 522 B.R. at 52-53. The court held that write-downs applied to transfers dating from the inception of an account do not violate the two-year reach-back limitation in Section 548(a) because a write-down "does not disturb or avoid

- 11 -

the transfer; it merely determines the value of what was transferred based on the net investment in the transferor's account." *Id.* at 53.

The court also rejected the argument that the Inter-Account Write-Downs improperly combined customer accounts when calculating net equity, contrary to the requirements of SIPA:

> The transferor and transferee accounts remain separate, and their balances are computed separately. For example, where the transferor withdrew more than he deposited and his account balance is actually negative, the negative balance does not transfer to the transferee account. Instead, the value of the transfer is zero.

*Id.* at 56. In so holding, the bankruptcy court relied on the *Net Equity Decision* and *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416 (S.D.N.Y. 2013) (the "***Antecedent Debt Decision***").

## G. The District Court Ruling

Appellants timely appealed the bankruptcy court's *Inter-Account Transfer Decision* to the district court, which affirmed. *See District Court Decision*, at *16-*17. The district court recognized the distinctions between the statutory provisions on avoidance set out in the Bankruptcy Code and the authority of a SIPA trustee to adjudicate customer claims, acknowledging the different nature of the two statutory schemes. *Id.* at *48-*53. Accordingly, the district court limited its decision to SIPA net equity calculations. *Id.* at *55-*56.

- 12 -

The court upheld the Trustee's inter-account methodology, finding that the *Net Equity Decision* was practically dispositive of the issue. Acknowledging that the *Net Equity Decision* did not actually address inter-account transfers, the district court nevertheless found that the decision permitted the Trustee to write off transactions that were recorded on the broker's books and records as cash transfers. *Id.* at *32- *42.

Like the bankruptcy court, the *District Court Decision* rejected the argument that the Trustee's write-off of all or part of a transfer ignores the separate nature of transferor and transferee accounts. *Id.* at *64-*66. The district court saw this as a matter of mechanics of claim calculation rather than a violation of SIPA's command to treat each account as separate for the purpose of calculating that account holder's net equity. Further, the *District Court Decision* found that although the Trustee admitted the transfers, it was not required to assume that a transfer in fact took place within the meaning of the Bankruptcy Code. *Id*. at *16 n.4. Like the bankruptcy court, the *District Court Decision* refused to hold that a SIPA trustee must unwind inter-account transactions in the same manner as cash payments to customers recorded in the debtor's books and records. *Id*. at *39-*40.

## SUMMARY OF ARGUMENT

This Court should reject the Trustee's Inter-Account Write-Downs because they violate SIPA and improperly circumvent the Bankruptcy Code's limitations

on his avoidance powers in three ways. First, to calculate each customer's net equity, SIPA requires the Trustee to include "the sum which would have been owed by the debtor" to his customer if the debtor had liquidated. 15 U.S.C. § 78*lll*(11). State law governs what Madoff Securities owed to its customers, and dictates that customers had legal rights to withdraw the full face value of any inter-account transfers recorded to their accounts. Because Madoff Securities owed the full face value of those inter-account transfers to customers, SIPA bars the Trustee from discounting them through his Inter-Account Write-Downs.

Second, SIPA directs the Trustee to treat each customer account separately. 15 U.S.C. §§ 78fff–3(a)(2), 78*lll*(11). The Inter-Account Write-Downs reduce the net equity in the transferee's account based on the purported lack of net equity in the transferor's separate account. This combination of customer accounts violates SIPA. Third, the Trustee has a statutory duty to satisfy customer net equity claims that are ascertainable from the debtor's "books and records." 15 U.S.C. § 78fff–2(b). Amici were customers,[8] and Madoff Securities' books and records show that the inter-account transfers occurred and were recorded as cash deposits. SIPA bars the Trustee from simply disregarding these transactions.

---

[8] "Customer" includes "any person who has deposited cash with the debtor for the purpose of purchasing securities[.]" 15 U.S.C. § 78*lll*(2)(B).

If the Trustee wants to unwind recorded inter-account transfers, he must formally proceed in avoidance. SIPA provides that the Trustee may only avoid a transfer of customer property "if and to the extent that such transfer is voidable or void under the provisions of [the Bankruptcy Code]." 15 U.S.C. § 78fff–2(c)(3). Thus, whether the Trustee can avoid a transfer is governed exclusively by the Bankruptcy Code, not the Trustee's creative accounting methods. The Inter-Account Write-Downs are an attempt to circumvent this process and its limitations. The lower courts clearly felt constrained by the *Net Equity Decision* and *Antecedent Debt Decision* to allow the Trustee to proceed, despite the statutory constraints. But the *Net Equity Decision* is silent on the treatment of inter-account transfers and the *Antecedent Debt Decision* addressed only the definition of "value" under Section 548(c) of the Bankruptcy Code. Neither decision controls here.

The Court should reverse the bankruptcy court's decision, and hold that SIPA bars the Trustee from unilaterally writing off portions of inter-account transfers in making customer claim determinations. Whatever its ruling, Amici respectfully request that the Court restrict its holding to the interpretation of "net equity" under SIPA. Amici are litigating before the lower courts the treatment of inter-account transfers in the context of the value defense, and will address that issue when it is properly before this Court.

## ARGUMENT

**A.  Under SIPA, the full face-value of any inter-account transfers, as noted on account statements and trade confirms, must be credited to the receiving customer.**

The lower courts' approval of the Trustee's Inter-Account Write-Downs reflects an incorrect interpretation of SIPA.  Under SIPA, the Trustee must

> promptly discharge . . . all *obligations of the debtor* to a customer relating to, or net equity claims based upon, securities or cash, by . . . the making of payments to or for the account of such customer . . . insofar as such obligations are ascertainable from the *books and records* of the debtor or are otherwise established to the satisfaction of the trustee.

15 U.S.C. § 78fff–2(b) (emphasis added).  Here, the Trustee's treatment of inter-account transfers in net equity calculation violates SIPA for three reasons:  (1) it fails to discharge Madoff Securities' obligations to the transferee customer; (2) it violates SIPA's requirement that distinct customer accounts be treated separately; and (3) it selectively ignores Madoff Securities' books and records, which the Trustee concedes show that these customers were credited with inter-account transfers of cash.

**1.  The definition of "net equity" includes amounts "owed," and under state law, Madoff Securities owed its customers the full face-value of any inter-account transfer.**

SIPA defines "net equity" as "the dollar amount of the account or accounts of a customer, to be determined by– (A) calculating the sum which would have been *owed by the debtor* to such customer if the debtor had liquidated[.]"  15

- 16 -

U.S.C. § 78*lll*(11) (emphasis added).  State law governs a debtor's obligations to its customers.  *Butner v. United States*, 440 U.S. 48, 56-57 (1979).  Thus, to calculate net equity, the Trustee must properly account for what Madoff Securities *owed* to its customers under state law.

Under New York law, a broker-dealer owes its customers the financial assets identified in their account statement.  *See, e.g.*, N.Y.U.C.C. § 8–501(b)(1) & cmt. 2 (a broker's written crediting of a financial asset to a customer's account creates an enforceable securities entitlement).  Recognizing that legal obligation, this Court explicitly held that each customer's withdrawal from a Madoff Securities account constituted a "settlement payment" in satisfaction of these contractual and legal obligations:

> [I]f I instruct my broker to sell my shares of ABC Corporation and remit the cash, that payment is a "settlement" even if the broker may have failed to execute the trade and sent me cash stolen from another client. As the district court correctly concluded, because the customer granted [Madoff Securities] discretion to liquidate securities in their accounts to the extent necessary to implement their sell orders or withdrawal requests, each transfer in respect of a [sic] such an order or request constituted a settlement payment.

*Picard v. Ida Fishman Revocable Trust*, 773 F.3d 411, 422-23 (2d Cir. 2014), *cert. denied,* 135 S. Ct. 2858 & 2859 (2015) (the ***"546(e) Decision"***).

This Court has unequivocally confirmed that Madoff Securities had a legal obligation to settle withdrawal requests up to the full value of securities and cash

shown on a customer's account statements.  Likewise, Madoff Securities had an indisputable obligation to customers for the full face-value of the cash amount of the transfer shown on their account statements.  Thus, the *full face-value* of the inter-account transfers of cash to a transferee customer shown on Madoff Securities statements were "owed by the debtor" for the purpose of 11 U.S.C. § 78*lll*(11) and the calculation of that customer's net equity.  Because the debtor owed the full face-value of the inter-account transfers, the lower courts erred by allowing the Trustee to discount them when calculating net equity.

      **2.     The Trustee's Inter-Account Write–Downs ignore the separate nature of the transferor and transferee accounts.**

The Trustee is obligated to conduct this proceeding consistent with SIPA and its rules.  SIPA explicitly directs that "a customer who holds accounts with the debtor in separate capacities shall be deemed to be a different customer in each capacity" for purposes of distributions.  15 U.S.C. § 78fff–3(a)(2).  Similarly, SIPA provides that "[i]n determining net equity . . . , accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers."  *Id.* § 78*lll*(11) (customer's net equity is based on the amounts owed to "such customer" plus the securities positions of "such customer," less any indebtedness of "such customer").[9]  The Trustee's approach is improper because it has the effect of

---

[9] Likewise, the Securities Investor Protection Corporation ("SIPC") rules confirm that customer accounts must be treated separately: "Accounts held by a customer

holding a *transferee* responsible for the purported lack of principal in a *transferor's* Madoff Securities account. This violates SIPA's command to treat the transferor and transferee accounts as separate accounts in the determination of net equity.

The Trustee's treatment of inter-account transfers improperly blurs the lines between transferor and transferee accounts. Specifically, where the Trustee disregarded the face value of a transfer, he imputed a transferor's purported lack of principal to the receiving account on the grounds that the transferor lacked sufficient cash equity to support the face amount of the transfer. This reduces the transferee's net equity through the reduction or complete elimination of the credit to the transferee's account, causing the transferee customer's net equity claim to be computed based on transactions that took place entirely in the transferor's separate customer account. Yet, under the statute and the SIPC rules, two customers (the transferor and transferee) must be treated as separate, along with their brokerage accounts.[10]

---

in different capacities . . . *shall* be deemed to be accounts of 'separate' customers." 17 C.F.R. § 300.100(b). Accounts held by corporations, partnership or unincorporated associations are separate from those held by partners or owners of the entity. *Id.* § 300.103. Trusts are distinct customers from a trustee, settlor, or trust beneficiary. *Id.* § 300.104(b).

[10] The Trustee has not alleged that the transferor and transferee accounts were not in fact separate within the meaning of SIPA. Such a claim is more properly lodged in an avoidance proceeding.

The lower courts held that the Trustee did not impermissibly combine separate accounts because, at most, the Trustee only reduced the amount of the transfer to $0. In other words, if the transferor had a negative net equity, that negative net equity was not passed on to the transferee:

> The transferor and transferee accounts remain separate, and their balances are computed separately. For example, where the transferor withdrew more than he deposited and his account balance is actually negative, the negative balance does not transfer to the transferee account. Instead, the value of the transfer is zero.

*Inter-Account Transfer Decision*, 522 B.R. at 56. But this is merely a matter of degree: While the Trustee may not have *completely* combined transferee and transferor accounts in calculating net equity, he failed to treat the accounts as wholly separate when he reduced the transferee's net equity by the purported deficit in the transferor's account. This improperly circumvents the Trustee's obligation to treat separate accounts separately for all purposes under SIPA, and departs from his statutory duty to formally avoid a transfer instead of merely making an adjustment to the account balance obligation. *See* Fed. R. Bankr. P. 7001(1) (claim to recover money or property requires an adversary proceeding); *In re Mansaray-Ruffin*, 530 F.3d 230, 232 (3d Cir. 2008) (matter required to be adjudicated by adversary proceeding in bankruptcy may not be determined through a simple contested matter).

- 20 -

### 3. The Trustee's Inter-Account Method fails to give effect to the cash deposits recorded in Madoff Securities' books and records.

In the *Net Equity Decision*, this Court recognized that SIPA imposes on the Trustee the duty to satisfy all obligations of a broker to its customers "insofar as the amount owed to the *customer* is 'ascertainable from the *books and records* of the debtor or [is] otherwise established to the satisfaction of the trustee.'" *Net Equity Decision*, 654 F.3d at 237 (quoting 15 U.S.C. § 78fff–2(b)). "Customer" includes "any person who has *deposited cash with the debtor* for the purpose of purchasing securities[.]" 15 U.S.C. § 78*lll*(2)(B) (emphasis added). Thus, where Madoff Securities' books and records show that a customer made or received a deposit of cash, the Trustee is bound to allow that customer's claim for return of that deposit.

Madoff Securities' customer account statements, part of the broker's books and records, identify the inter-account transfers as cash withdrawals from the transferor account and cash deposits into the transferee's account. The Trustee does not dispute that these transfers occurred or that the broker recorded them as cash transfers. *See* AA554. Nevertheless, the bankruptcy court allowed the Trustee to disregard these transactions where the amounts of the transfers reflected, in part, "the imaginary, fictitious profits that Madoff arbitrarily conferred *on the transferors*." *Inter-Account Transfer Decision*, 522 B.R. at 53 (emphasis added).

- 21 -

This is error: The source of a cash deposit is immaterial under the plain language of SIPA, as to both customer status and the calculation of net equity. Likewise, the court departed from SIPA by focusing on Madoff Securities' alleged fraud, and not on the actual cash deposit that the books and records show the transferee to have received. SIPA specifically includes a customer "who has a claim . . . arising out of sales or conversions" of their securities. 15 U.S.C. §78*lll*(2)(B)(iii).

### B. The Trustee's Inter-Account Write-Downs seek to improperly circumvent the limits on his avoidance powers under the Bankruptcy Code.

"A basic tenet of statutory construction . . . is that a text should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another[.]" *APWU v. Potter*, 343 F.3d 619, 626 (2d Cir. 2003) (internal quotation marks and alterations omitted). Under SIPA, the Trustee has legitimate ways to reach transfers of customer property and avoid them in whole or part, but he may not skip that process or its limitations by simply netting separate accounts against each other merely as a computational exercise.

The Bankruptcy Code empowers trustees to avoid certain "transfers" made and "obligations" incurred by the debtor. 11 U.S.C. § 548. SIPA incorporates these Bankruptcy Code provisions without qualification, including the limitations on those powers. 15 U.S.C. § 78fff–2(c)(3). SIPA, in turn, allows trustees to

recover "transfers" of customer property "transferred by the debtor . . . if and to the extent that such transfer is voidable or void under the provisions of title 11." *Id.* This section, which incorporates provisions of the Bankruptcy Code, is the sole source of a SIPA trustee's power to avoid transfers of customer property.

The inter-account transfers indisputably were transfers because they were a direct means of parting with cash. In relevant part, the Bankruptcy Code broadly defines a "transfer" as:

> (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—
>
> (i) property; or
>
> (ii) an interest in property.

11 U.S.C. § 101(54)(D). Here, a transfer undeniably took place—a customer requested a withdrawal from one account, the amount of which was to be deposited into another customer's account. To unwind these transactions, the Trustee must proceed in avoidance, and not simply erase them arithmetically.[11]

Under state law, the transferees are *bona fide* holders of their individual Madoff Securities accounts and have property interests in the full face-value of the inter-account transfers. *S.E.C. v. Universal Express, Inc.*, No. 04 Civ. 2322 (GEL), 2008 U.S. Dist. LEXIS 35342, at *9 (S.D.N.Y. Apr. 30, 2008) (for "'money or

---

[11] Specifically, the Trustee must avoid the "initial transfer" (the amount transferred by the transferor), and then proceed under Section 550(b) against the transferee as a "subsequent transferee" (for the amount transferred).

negotiable securities transferable by delivery, which have been put into circulation and have come to the hands of bona fide holders[,] [t]he right of the owner to pursue and reclaim the money and securities there ends, and *the holder is protected in his title*.'") (emphasis added and citations omitted); *In re Dreier LLP*, 429 B.R. 112, 136 (Bankr. S.D.N.Y. 2010) ("While ordinarily 'a thief cannot convey a good title to stolen property,' a transferee 'acting in good faith may obtain title to money from a thief.'") (citations omitted). Amici received their inter-account transfers in good faith, and for value. Even if the amount of an inter-account transfer exceeds the net equity of the transferor, transferees may retain the full amounts of the transfers.

The bankruptcy court refused to consider whether the inter-account transfers qualified as "transfers" under the Bankruptcy Code. *See Inter-Account Transfer Decision*, 522 B.R. at 46 n.1 ("The terms 'transfer,' 'transferor' and 'transferee' in this decision are used for convenience and are not intended to imply that a transfer took place between the transferor and transferee within the meaning of 11 U.S.C. § 101(54)."). Rather than confront the statutory language, the bankruptcy court held that "[a] customer can't transfer what he doesn't have," and the "Inter-Account Method does not disturb or avoid the transfer; it merely determines the value of what was transferred based on the net investment in the transferor's account." *Id.* at 53.

- 24 -

But this is error: Under state law, a good faith transferee has a legal right to retain the transfer.  At the time of each transfer, the broker owed an obligation to the transferor to satisfy any requested withdrawal up to the total account value shown on the customer's statement.  Rather than withdraw cash, the transferor directed Madoff Securities to transfer funds to the recipient.  An inter-account transfer made outside the two year reach-back period reflects the transfer of an unavoidable right to payment, in exactly the same manner as if the transferor had withdrawn the funds at that time rather than transferring them through an inter-account transfer to someone else.  Recharacterizing this right to payment years after the fact does not change its nature, and writing off the amount of that transfer is no different from avoiding it.  In this case, the Trustee may *avoid* such transfers, if at all, only under Section 548(a)(1)(A).  If the inter-account transfer occurred outside the applicable reach-back period under the avoidance provisions, it cannot be undone.

In contrast, the district court concluded that the parties failed to assert that the transfers were actual transfers within the meaning of the Bankruptcy Code. *District Court Decision*, at *16 n.4.  Amici note that Appellants dispute this suggestion.  In any event, to properly resolve this appeal, the Court must address the Trustee's admissions that Madoff Securities' books and records reflect cash transfers, and that each customer received a confirmation showing a cash credit to

- 25 -

her account from the transferor account. These inter-account credit and debit transactions clearly meet the statutory definition of transfer in the Bankruptcy Code, which SIPA borrows.[12] Because Madoff Securities' books and records reflect cash transfers, the Trustee has no alternative but to invoke his avoidance powers to unwind those transactions. Any other course of action raises serious due process concerns for the innocent parties to the transfer transaction.

### C. Neither the *Net Equity Decision* nor the *Antecedent Debt Decision* support the bankruptcy court's decision.

The bankruptcy court erred in relying on the *Net Equity Decision* and *Antecedent Debt Decision* as support for its opinion. The *Net Equity Decision* did not address the treatment of inter-account transfers, and the *Antecedent Debt Decision* is not controlling and is no longer good law.

The *Net Equity Decision* is silent on how inter-account transfers should be treated in determining a customer's net equity. Although the bankruptcy court recognized that "[t]he *Net Equity Decision* did not expressly address the treatment of inter-account transfers," it held that "increasing [customers'] net equity claims by giving them credit for the fictitious profits 'transferred' into their accounts

---

[12] The Trustee contends that no actual movement of cash took place. But this argument is facile. The essence of the book entry system is that cash does not physically change hands. Rather, movements of cash are recorded as book entry credits and debits to customer accounts, which are legally enforceable obligations. *See* NYUCC Article 8, Section 502(b) (defining securities entitlement as financial asset).

- 26 -

contravenes the *Net Equity Decision*." *Inter-Account Transfer Decision*, 522 B.R. at 47, 51. As this Court stated in the *Net Equity Decision*: "The two competing methods of calculating 'net equity' proposed by the parties to this litigation are the only two methods at issue here. We do not hold that they are the only possible approaches to calculation of 'net equity' under SIPA." *Net Equity Decision*, 654 F.3d at 235 n.5. The *Net Equity Decision* did not address the Inter-Account Write-Downs. The bankruptcy court erred in holding that the customer's position on inter-account transfers would contravene any part of the *Net Equity Decision*.

The linchpin of the *Net Equity Decision* was the Trustee's assertion that the books and records of Madoff Securities were *inconsistent* with the amounts shown on the customer statements and therefore the statements could be disregarded. Here, in contrast, the books and records *confirm* the cash transfers between accounts; there is no basis to disregard them except by invoking the avoidance provisions of the Bankruptcy Code. Absent avoidance, the Trustee must give effect to the recorded transfers.

Continuing to blur the distinction between SIPA and the Bankruptcy Code, the Trustee argued below that "netting cash deposits against cash withdrawn prior to the two-year statutory reach-back period governing the avoidance of fraudulent transfers is consistent with the *Antecedent Debt Decision*." *Inter-Account Transfer Decision*, 522 B.R. at 49 (citing *Trustee Mem.* at 20-22). The bankruptcy court

- 27 -

expressly relied on the *Antecedent Debt Decision* in holding that the Trustee's treatment of inter-account transfers did not violate the two-year reach-back period for fraudulent transfers under Section 548(a)(1)(A). *Id.* at 51‑54. This reliance was misplaced.

In the *Antecedent Debt Decision*, the district court reviewed whether inter-account transfers can constitute "value" under Section 548(c) in the context of avoidance. *Antecedent Debt Decision*, 499 B.R. at 428. The *Antecedent Debt Decision* held, without support, that "although the [SIPA] Trustee has the same authority to avoid transfers as a bankruptcy trustee, *those powers must be interpreted through the lens of SIPA's statutory scheme*." *Id.* at 423 (emphasis added). Thus,

> to the extent that SIPA limits the Trustee's avoidance powers to those transfers that are 'void or voidable' under the Bankruptcy Code, that provision merely gives the Trustee the authority to rely on section 548(a)(1)(A). It does not necessarily imply that section 548(c)'s affirmative defense must apply in the same way to the customer property estate as it would to the general estate.

*Id.* at 424. Whether customers' net equity claims under SIPA should include the full, unadjusted amount of inter-account transfers was not addressed in the opinion. Further, even if the *Antecedent Debt Decision* was relevant to the interpretation of "net equity", it should not be followed here because its fundamental premise – that

SIPA permits a trustee to override the statutory defenses to avoidance – was negated by two subsequent Second Circuit opinions.

This Court has twice expressly rejected the argument that the Trustee's avoidance powers under the Bankruptcy Code somehow are expanded by SIPA. *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 212 (2d Cir. 2014) ("A SIPA trustee has no greater legal interest in unadjudicated fraudulent transfers than does a trustee in bankruptcy."); *546(e) Decision*, 773 F.3d at 423 (rejecting argument that SIPA controls any part of the Bankruptcy Code avoidance policy). The *Antecedent Debt Decision* cannot be reconciled with this Court's rejection of its premise. Therefore, the *Antecedent Debt Decision* should have no bearing on the proper treatment of inter-account transfers under SIPA.

> **D.    This Court should restrict its holding to an interpretation of "net equity" under SIPA and not "value" as defined under 548(c) of the Bankruptcy Code.**

The sole issue here is "the appropriate methodology for computing the 'net equity' in a customer account maintained at [Madoff Securities] where the balance in the account depends, to some extent, on amounts previously 'transferred' into that account from another [Madoff Securities] account." *Inter-Account Transfer Decision*, 522 B.R. at 46. SIPA—not the Bankruptcy Code—governs the computation of net equity. *See* 15 U.S.C. §§ 78fff–2(b), 78*lll*(11). Value under the Bankruptcy Code is a far more inclusive concept than net equity under SIPA

- 29 -

and its scope is evaluated under the Code. *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) (when exercising "statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions" in the Bankruptcy Code). Regardless of what the Court rules on the merits of this appeal, its ruling should explicitly be limited to the SIPA customer claims context, because the broader question of value is not before the Court.

SIPA protects *customers* by giving them preferred creditor status in a broker liquidation. *Net Equity Decision*, 654 F.3d at 235. In contrast, the Bankruptcy Code avoidance provisions protect the *debtor's estate* and *creditors* by recognizing property rights through the value defense. *See In re United Energy Corp.*, 944 F.2d 589, 596-97 (9th Cir. 1991). The Trustee will undoubtedly suggest that the same method of determining net equity for inter-account transfers also governs the value defense against avoidance claims. But net equity and value are two separate statutory concepts, there is no support for this argument, and this Court should not address it here.

Throughout this litigation, the Trustee blurred the distinction between SIPA and the Bankruptcy Code where doing so served his interests. This Court consistently rejected his efforts. First, in *Fairfield*, this Court rejected the Trustee's argument that SIPA expands his avoidance powers:

> [SIPA] merely engrafts special features onto the familiar framework
> of a liquidation proceeding under Chapter 7 of the Bankruptcy Code,

*see* 15 U.S.C. § 78fff(b), to address the concerns peculiar to the orderly liquidation of a brokerage.

762 F.3d at 212.

In the *546(e) Decision*, this Court again rejected the Trustee's argument that Section 546(e) of the Bankruptcy Code was limited by "net equity" under SIPA:

> … we interpreted "net equity" in a manner that would harmonize it with the SIPA statutory framework as a whole. Section 546(e), however, is part of the Bankruptcy Code, not SIPA, and was not in issue in [the *Net Equity Decision*]. This is important because, in enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality. . . . We are obliged to respect the balance Congress struck among these complex competing considerations.

773 F.3d at 423 (citation omitted). To the extent this Court reaches the issue, it should reject again the Trustee's attempt to blur the differences between SIPA and the Bankruptcy Code.

## CONCLUSION

Amici request that this Court reverse the lower courts and declare that the Trustee must honor the cash transfers recorded on the books and records unless he formally avoids such transfers. Whatever the Court's ruling, it should expressly reserve for other proceedings how inter-account transfers should be treated in for the value defenses asserted in ongoing avoidance actions.

DATED:     May 31, 2015

**BAKER & McKENZIE LLP**

By:   s/ Richard A. Kirby
Richard A. Kirby
Laura K. Clinton
815 Connecticut Ave., N.W.
Washington D.C. 20006
Tel.:  (202) 452-7020
Fax:  (202) 452-7220
Richard.Kirby@bakermckenzie.com

*Attorneys for Amici Identified in Appendix A*

**PRYOR CASHMAN LLP**

s/ Richard Levy, Jr.
Richard Levy, Jr.
7 Times Square
New York, New York 10036
Tel:  (212) 421-4100
Fax:  (212) 326-0806
rlevy@pryorcashman.com

*Attorneys for Amici Identified in Appendix B*

**DENTONS US LLP**

s/ Carole Neville
Carole Neville
1221 Avenue of the Americas
New York New York 10020
Tel:  (212) 768-6700
Fax:  (212) 768-6800
carole.neville@dentons.com

*Attorneys for Amici Identified in Appendix C*

**GOODWIN PROCTER LLP**

s/ William P. Weintraub
William P. Weintraub
Kizzy L. Jarashow
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel:  (212) 813-8800
Fax:  (212) 355-3333
wweintraub@goodwinprocter.com

*Attorneys for Amici Identified in Appendix D*

## APPENDIX A

### AMICI REPRESENTED BY
### BAKER & MCKENZIE

| Amici | Adversary Proceeding |
|---|---|
| Norman Blum | *Picard v. Norman Blum*, Bankr. S.D.N.Y. Adv. Pro. No. 10-04846 (SMB) |
| Estate of Doris M. Pearlman; Heidi Pearlman; Jill Beth Pearlman; Doris M. Pearlman Revocable Trust; Marvin A. Goldenberg | *Picard v. Estate of Doris M. Pearlman et al.*, Bankr. S.D.N.Y. Adv. Pro. No. 10-04504 (SMB) |
| Lanx BM Investments, LLC; The Lanx Fund II, LP; Wolfson Cousins, LP; Edara Partnership | *Picard v. Lanx BM Invs., LLC et al.*, Bankr. S.D.N.Y. Adv. Pro. No. 10-04384 (SMB) |
| Stuart J. Rabin | *Picard v. Rabin*, Bankr. S.D.N.Y. Adv. Pro. No. 10-04675 (SMB) |

Baker & McKenzie
Richard A. Kirby
Laura K. Clinton
815 Connecticut Ave., NW
Washington, D.C.  20006
(202) 452-7020

# APPENDIX B

## AMICI REPRESENTED BY
## PRYOR CASHMAN LLP

| Amici | Adversary Proceeding |
|-------|----------------------|
| Murray Pergament 1999 Trust f/b/o Bruce Pergament | *Picard v. Bruce D. Pergament, et al.* Bankr. S.D.N.Y Adv. Pro. No. 10-05194 (SMB) |
| Linda Horowitz Spousal Trust f/b/o Richard Horowitz | *Picard v. Bruce D. Pergament, et al.* Bankr. S.D.N.Y Adv. Pro. No. 10-05194 (SMB) |
| James P. Marden | *Picard v. James P. Marden, et al.* Bankr. S.D.N.Y Adv. Pro. No. 10-04341 (SMB) |
| Patrice M. Auld | *Picard v. Patrice M. Auld, et al.* Bankr. S.D.N.Y Adv. Pro. No. 10-04343 (SMB) |
| Bernard Marden Profit Sharing Plan | *Picard v. Bernard Marden Profit Sharing Plan, et al.,* Bankr. S.D.N.Y Adv. Pro. No. 10-05168 (SMB) |
| Marden Family Limited Partnership | *Picard v. Marden Family Limited Partnership, et al.,* Bankr. S.D.N.Y Adv. Pro. No. 10-04348 (SMB) |
| Stanley Plesent | *Picard v. Stanley Plesent* Bankr. S.D.N.Y Adv. Pro. No. 10-04375 (SMB) |

PRYOR CASHMAN LLP
Richard Levy, Jr.
7 Times Square
New York, NY 10036-6569
(212) 326-0856

APPENDIX C
AMICI REPRESENTED BY
DENTONS US LLP

| Amici | Adversary Proceeding |
|---|---|
| BARBARA J. BERDON | 10-04415 (BRL) |
| LAURA E. GUGGENHEIMER COLE | 10-04882 (BRL) |
| ALVIN GINDEL REVOCABLE TRUST, a Florida Trust, and ALVIN GINDEL, in his capacity as trustee of the Alvin Gindel Revocable Trust and individually as settlor and beneficiary thereof | 10-04925 (BRL) |
| ROSE GINDEL TRUST, ROSE GINDEL, individually and in her capacity as Trustee of the Rose Gindel Trust, MICHAEL GINDEL, individually and in his capacity as Trustee of the Rose Gindel Trust, BRENT GINDEL, in his capacity as Trustee of the Rose Gindel Trust, and ALVIN GINDEL, in his capacity as Trustee of the Rose Gindel Trust | 10-04401 (BRL) |
| S&L PARTNERSHIP, a New York partnership, CARLA GOLDWORM, Trust For The Benefit of Samuel Goldworm, a New York trust, SAMUEL GOLDWORM, as trustee and as an individual, Trust For The Benefit of Luke Goldworm, a New York trust, and LUKE GOLDWORM, as trustee and as an individual | 10-04702 (BRL) |
| TOBY T. HOBISH, as an individual and as trustee, LI, RAM L.P., a New York limited partnership, AMY A. HOBISH, MITCHELL K. HOBISH, as an individual and as trustee, RICHARD S. HOBISH, TOBY T. HOBISH LIVING TRUST, a New York trust, MARITAL TRUST UNDER ARTICLE XXII OF THE HERBERT W. HOBISH LIVING TRUST, a New York trust, and NON MARITAL TRUST UNDER ARTICLE XXII OF THE HERBERT W. HOBISH LIVING TRUST, a New York trust | 10-05236 (BRL) |
| LAPIN CHILDREN LLC | 10-05209 (BRL) |

- 36 -

| Amici | Adversary Proceeding |
|---|---|
| DAVID R. MARKIN, individually and as trustee of the David Markin Charitable Remainder Unitrust #1, and David R. Markin Charitable Remainder Unitrust #2, SOUTHPAC INTERNATIONAL TRUST LTD., as trustee of the David R. Markin 2003 Trust, DAVID R. MARKIN 2003 TRUST, DAVID MARKIN CHARITABLE REMAINDER UNITRUST #1, DAVID R. MARKIN CHARITABLE REMAINDER UNITRUST #2 | 10-05224 (BRL) |
| THE NORMA SHAPIRO REVOCABLE DECLARATION OF TRUST UNDER AGREEMENT DATED 9/16/2008; TRUST UNDER WILL OF PHILIP L SHAPIRO; NORMA SHAPIRO, individually, and in her capacity as Trustee for the Norma Shapiro Revocable Declaration of Trust Under Agreement Dated 9/16/2008 and the Trust Under Will of Philip L. Shapiro; and MARTIN ROSEN, in his capacity as Trustee of the Trust Under Will of Philip L. Shapiro | 10-04486 (BRL) |

DENTONS US LLP
Carole Neville
1221 Avenue of the Americas
New York, NY 10020-1089
(212) 768-6700

- 37 -

**APPENDIX D**
AMICI REPRESENTED BY
GOODWIN PROCTER LLP

| Amici | Adversary Proceeding |
|-------|---------------------|
| Jeffrey Hinte | *Picard v. Jeffrey Hinte*, Bankr. S.D.N.Y Adv. Pro. No. 10-04450 (SMB) |

GOODWIN PROCTER LLP
William P. Weintraub
Kizzy L. Jarashow
The New York Times Building
620 Eighth Avenue
New York, NY  10036-6569
 (212) 813-8800

## CERTIFICATE OF COMPLIANCE WITH FRAP 32

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,994 words, excluding the parts of the brief exempted by Rule 37(a)(7)(B)(iii).

DATED:     May 31, 2016

**BAKER & McKENZIE LLP**

By:   s/ Richard A. Kirby            
Richard A. Kirby
Laura K. Clinton
815 Connecticut Ave., N.W.
Washington D.C. 20006
(202) 452-7020 (Telephone)
(202) 452-7220 (Facsimile)
Richard.Kirby@bakermckenzie.com

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on May 31, 2016, I electronically filed the foregoing document, including appendices, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

**BAKER & McKENZIE LLP**

By:   s/ Richard A. Kirby          
Richard A. Kirby
Laura K. Clinton
815 Connecticut Ave., N.W.
Washington D.C. 20006
(202) 452-7020 (Telephone)
(202) 452-7220 (Facsimile)
Richard.Kirby@bakermckenzie.com